IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| DEANNE D. BROWN, | ) | Civil Action No. 3:11-723-JFA-JRM |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY | ) ) ) | |
| Defendant. | ) ) | |

This case is before the Court pursuant to Local Civil Rules 73.02(B)(2)(a) and 83.VII.02, et seq., DSC, concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

## ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for DIB and SSI on May 31, 2007, alleging disability as of April 15, 2007. Plaintiff's applications were denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on March 25, 2010, at which Plaintiff appeared and testified. On April 9, 2010, the ALJ issued a decision denying benefits and finding that Plaintiff was not disabled. The ALJ, after hearing the testimony of a vocational expert ("VE"), concluded that work exists in the national economy which Plaintiff could perform.

Plaintiff was thirty-four years old at the time of the ALJ's decision. She has a high school education (GED) with one year of college. (Tr. 210). Plaintiff's past relevant work includes assistant

manager, bookkeeper/accountant, and dog groomer. (Tr. 25, 225). Plaintiff alleges disability due to depression, anxiety, and a neck impairment.

The ALJ found (Tr. 14-26):

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2009.

2. The claimant has not engaged in substantial gainful activity since April 15, 2007, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971, *et seq.*).

3. The claimant has the following severe impairments: depression and anxiety (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the full range of work at all exertional levels but with the following nonexertional limitations: she would be limited to unskilled jobs with no contact with the general public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on August 3, 1975 and was 31 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the

> national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969 and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 15, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

On January 25, 2011, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (Tr. 1-4). Plaintiff filed this action in the United States District Court on March 25, 2011.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971); Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a).

## **MEDICAL EVIDENCE**

Plaintiff was seen on April 24, 2007 by Dr. Dean Koukos, a family physician, for complaints of neck pain, recurrent parathesias of her left arm and leg, and weakness in her right hand. (Tr. 306). She was subsequently seen for follow-up examinations on September 12, October 5, and November 2, 2007. (Tr. 382-383, 385-386). Examination findings were very limited, and generally benign, revealing grossly intact cranial nerves and symmetrical deep tendon reflexes (Tr. 383). Dr. Koukos directed Plaintiff to wear a soft cervical collar (Tr. 385).

On August 22, 2007 (finalized on October 18, 2007), Dr. Ellen Humphries, a State agency physician, opined that Plaintiff's musculoskeletal impairments were not severe. (Tr. 368).

On September 5, 2007, Dr. Koukos completed a form concerning Plaintiff's mental condition in which he wrote that Plaintiff had been diagnosed with anxiety, for which Xanax had been prescribed. He noted that she was oriented, her thought processes were distractible, but her thought content was appropriate, and her attention, memory, and concentration were adequate. (Tr. 350).

Dr. E. G. Schleimer, a psychologist, performed a consultative mental examination on September 25, 2007. He diagnosed Plaintiff with a chronic dysthymic disorder with anxiety and indicated that her global assessment of functioning (GAF) was 61,[1] indicative of only mild symptoms, or some difficulty in occupational functioning. (Tr. 352-353).

Dr. Kevin King, a State agency psychologist, reviewed Plaintiff's records and completed a Mental Residual Functional Capacity form on April 24, 2008. He opined that Plaintiff could perform unskilled work with limited contact with the general public. (Tr. 394-396). On April 29, 2008, Dr. Edward Stahl, a State agency physician, opined that Plaintiff's musculoskeletal impairments were non-severe. (Tr. 412). In a Case Analysis dated May 13, 2008, State agency physician Dr. Seymour Oberlander opined that Plaintiff's physical impairments were non-severe. (Tr. 420).

During June 2008, Dr. Richard Eisenberg performed a neurologic evaluation. Plaintiff reported that she had been assaulted in 2000, at which time her neck was fractured. Examination

---

[1]The GAF contains a numeric scale (0 through 100) used to rate the severity of psychological symptoms and/or social, occupational, or school functioning, generally for the level of functioning at the time of evaluation. A GAF score between 51 to 60 indicates "moderate symptoms" or "moderate difficulty in social or occupational functioning," and 61 and 70 reflects "mild symptoms" or "some difficulty in social, occupational, or school functioning." Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32-34 (4th ed. 2000).

revealed a normal gait, intact sensation, and an ability to move her upper and lower extremities strongly against resistance. (Tr. 448-449). A subsequent EEG was normal (Tr. 451), and an MRI revealed a disc bulge and annular tear at L4-5 with mild foraminal narrowing. (Tr. 454-455). Dr. Eisenberg noted Plaintiff was not showing any radiculopathic weakness. (Tr. 449).

Plaintiff returned to Dr. Koukos on September 19, 2008 for complaints of neck pain. Examination revealed neck pain with movement, intact cranial nerves, and normal deep tendon reflexes. Dr. Koukos diagnosed Plaintiff with neck strain, but did not impose any limitations. (Tr. 463-464). On November 20, 2008, Dr. Koukos assessed Plaintiff with chronic anxiety. (Tr. 474-475).

Dr. Koukos completed a Physical Capacities Evaluation Form on November 7, 2008. He opined that Plaintiff could sit one hour, stand one hour, and walk one hour during an eight-hour workday. He further opined that she could occasionally lift one to ten pounds. (Tr. 459-460). Approximately one month later, Dr. Koukos stated that Plaintiff was being treated for cervical and lumbar pain, and opined that she was permanently disabled. (Tr. 498). Plaintiff followed up with Dr. Koukos during January, February, and March 2009 for complaints of back pain and anxiety. Dr. Koukos diagnosed chronic pain, but did not note any limitations. (Tr. 533, 539, 541).

On May 1, 2009, Plaintiff was involved in a motor vehicle accident and suffered a C7 fracture (Tr. 566-567). A cervical MRI revealed "[f]indings consistent with a C7 fracture with an avulsed component abutting the cord producing some mild indentation upon the cord but no cord signal abnormality." (Tr. 654). On May 2, 2009, Dr. Norman Chutkan performed a C6-7 cervical diskectomy on Plaintiff. (Tr. 555-556). Plaintiff was discharged from the hospital on May 6, 2009. (Tr. 576-577). Dr. Chutkan prescribed occupational therapy on June 5, 2009. (Tr.587).

5

During June 2009, Plaintiff began to see Dr. Walter Smith for complaints of pain in her neck and shoulders. (Tr. 758). One month later, Dr. Smith completed a Physical Capacities Evaluation Form in which he noted that Plaintiff had a C7 fracture with mild palsy in both upper extremities. He opined that Plaintiff could sit for two hours at a time for up to four hours, stand one hour at a time for up to two hours, and walk one hour during an eight-hour workday. He also opined that Plaintiff should not lift or carry any weight, and that her limitations were temporary from May 1, 2009 to December 2009. (Tr. 589-590).

Plaintiff continued to see Dr. Smith for follow-up appointments through October 2009. (Tr. 762-771). On July 28, 2009, Plaintiff complained that she had numbness in her back and right leg when she looked down, and that her depression was no better. Dr. Smith indicated that Plaintiff had chronic neck and back pain. (Tr. 761). Dr. Smith saw Plaintiff again on August 5, 2009, and August 12, 2009, for bilateral neck pain. Dr. Smith indicated that she was mildly distressed. (Tr. 762-763). On August 25, 2009, Dr. Smith assessed Plaintiff with depression and chronic neck pain and noted that she was distraught and in need of psychiatric care. (Tr. 764).

During September 2009, Dr. Mahmoud Abu-Atu evaluated Plaintiff's complaints of numbness and weakness in her upper extremities. Plaintiff reported intermittent pain in her neck and arms that was controlled with medication, and denied any numbness or weakness in her legs. Examination revealed normal motor tone, normal to near normal muscle strength in her upper extremities except for atrophy of the muscles of her hands, and normal muscle strength in her lower extremities. Nerve conduction studies/EMG showed chronic cervical radiculopathy. Dr. Abu-Atu directed Plaintiff to avoid heavy weight lifting, and to avoid frequent pulling, pushing, bending, and reaching. (Tr. 598-599).

On October 14, 2009, Dr. Smith completed a second Physical Capacities Evaluation Form in which he opined that Plaintiff's restrictions based on her C7 fracture were permanent. He opined that Plaintiff could sit for only two hours in an eight-hour workday, and could only stand and walk for one hour in an eight-hour workday. Dr. Smith also opined that Plaintiff could never lift, carry, push, pull, stoop, kneel, crouch, twist, climb stairs, reach, handle, finger, or feel. He thought she did not have the capacity for repetitive use of her feet or hands. Tr. 619-620.

Dr. Charles Nivens evaluated Plaintiff for complaints of neck pain on October 29, 2009. Examination revealed normal muscle tone, a normal gait and station, no atrophy, and decreased cervical range of motion. He assessed Plaintiff with a spinal cord injury- central cord. (Tr. 629-631). Plaintiff was involved in another automobile accident and treated at Beaufort Memorial Hospital from November 9 to 10, 2009. (Tr. 681-682). A CT scan revealed a linear lucency which extended through the right inferior facets and posteriorly to the lumina at C7. (Tr. 646).

In December 2009, Dr. Nivens noted that Plaintiff had normal muscle tone, intact sensation, normal deep tendon reflexes, and no atrophy. (Tr. 624-625). Plaintiff attended physical therapy in November and December 2009. (Tr. 659, 664-668).

After the ALJ's decision, Plaintiff submitted additional records to the Appeals Council. These records indicate that Dr. Carlos Montenegro of Southern Surgery Specialists treated Plaintiff for gastrointestinal problems (including surgery to repair a hiatal hernia and removal of her gallbladder) from August 19 to October 5, 2010. (Tr. 771-796). Plaintiff was treated by Dr. Sushma Kapoor from December 2009 to November 2010. (Tr. 795-798, 804-821). On November 11, 2010, Dr. Kapoor completed a form for the South Carolina Family Court in which he noted that Plaintiff was being

7

treated by him for neck pain, anxiety, and hypertension. He opined that Plaintiff was permanently and totally disabled. (Tr. 800).

## HEARING TESTIMONY

At the hearing before the ALJ, Plaintiff testified that she received her GED and completed two years of college (but did not receive a college degree). (Tr. 39). Plaintiff reported she had worked for a brief time in childcare, a convenience store, and telemarketing, but her physical and emotional limitations interfered with her ability to do her jobs. (Tr. 41-44). Plaintiff testified she had problems using her upper extremities (Tr. 45), and had pain if she sat for long periods of time (Tr. 46). She estimated she could sit for fifteen to twenty minutes, and stand for ten to fifteen minutes (Tr. 46-47). Plaintiff reported she had anxiety attacks about "once every two weeks" (Tr. 49), was unable to drive due to the limited range of motion in her neck and the sensations and nerve damage in her hands (Tr. 40), and had difficulty doing household chores (Tr. 49-51).

Plaintiff testified that she used a walker occasionally (mainly when she went out to shop which was limited in occurrence), she relied on her boyfriend and nine-year-old daughter to help with household chores, and her daughters helped her with bathing. (Tr. 47, 50, 54).

## DISCUSSION

Plaintiff alleges that: (1) the ALJ did not explain his findings concerning Plaintiff's RFC as required by SSR 96-8p; (2) the ALJ failed to properly assess the treating and evaluating physician's opinions; and (3) the ALJ erred in failing to evaluate evidence indicating that Plaintiff's spinal impairment met or equaled the Listing of Impairments ("Listings"), see 20 C.F.R. Pt. 404. Subpt. P.,

at § 1.04A (Disorders of the Spine). The Commissioner argues that substantial evidence[2] supports the final decision that Plaintiff was not disabled within the meaning of the Social Security Act.

A. Severe Impairment/RFC

Plaintiff alleges that the ALJ erred in failing to explain his findings regarding Plaintiff's RFC, as required by SSR 96-8p. She specifically argues that substantial evidence fails to support the ALJ's finding that she had no physical impairments or restrictions,[3] the ALJ failed to evaluate all of the medical opinions,[4] and the RFC analysis is not supported by substantial evidence

---

[2]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

[3]It is the claimant's burden to show that he or she had a severe impairment. See Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). A non-severe impairment is defined as one that does not "significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). "Basic work activities" are defined as:
> the abilities and aptitudes necessary to do most jobs. Examples of these include --
> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b). An impairment is "not severe" or insignificant only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984).

[4]To the extent that Plaintiff argues that the ALJ failed to properly consider the opinion of Dr.

in that the ALJ failed to explain what opinion evidence supported his finding that there were no physical restrictions. The Commissioner contends that the ALJ reasonably determined Plaintiff's RFC; any error in not finding Plaintiff's physical impairments to be severe is not legally relevant because the ALJ proceeded beyond step two of the sequential evaluation process[5] and assessed Plaintiff's RFC between steps three and four; and any error as to not finding her physical impairments to be severe is harmless because the ALJ determined, based on VE testimony, that she was limited to performing light jobs, thus accounting for any limitations that might have been caused by Plaintiff's physical impairments.

The ALJ's determination that Plaintiff did not have any severe physical impairment and that she was capable of performing the full range of work at all exertional levels is not supported by substantial evidence. Plaintiff has presented evidence that she was treated for a neck impairment during the relevant time period (including medications and physical therapy); she suffered a fracture to her cervical spine in May 2009 which required surgery and further treatment; two of her treating physicians (Koukos and Smith) imposed various limitations on her ability to work because of this impairment; and a consultative physician (Dr. Abu-Ata) advised her to avoid lifting heavy weights and to avoid frequent pulling, pushing, bending, and reaching as a result of her impairment. It is

---

[4](...continued)
Kapoor, such argument fails as the opinion was not rendered until after the ALJ's decision.

[5]In evaluating whether a claimant is entitled to disability insurance benefits, the ALJ must follow the five-step sequential evaluation of disability set forth in the Social Security regulations. See 20 C.F.R. § 404.1520. The ALJ must consider whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to her past work, and (5) if not, whether the claimant retains the capacity to perform specific jobs that exist in significant numbers in the national economy. See id.

unclear from the ALJ's decision why this impairment was determined to be non-severe and how she was able to perform the full range of exertional work despite this physical impairment.

Although an ALJ's failure to consider whether an impairment is severe may be harmless where the ALJ discusses the evidence and limitations related to that impairment at step four, see Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (noting that "[e]ven assuming that the ALJ erred in neglecting to list the bursitis at Step 2, any error was harmless" and "[t]he decision reflects that the ALJ considered any limitations posed by the bursitis at Step 4."), the ALJ here does not appear to have considered any limitations posed by Plaintiff's neck impairment at step four. The Commissioner argues that the ALJ took Plaintiff's physical impairment into consideration by determining, based on VE testimony, that she was limited to performing light jobs. The ALJ, however, found that Plaintiff could perform a full range of work at all exertional levels. (Tr. 21). At the hearing, the ALJ asked the VE to identify jobs which a claimant who is restricted to unskilled jobs which did not require contact with the general public could perform. In response, the ALJ identified the light, unskilled jobs of garment folder, mail sorter, and proofreader/helper. (Tr. 59-60). Although the jobs identified by the VE are at the light exertional level, there is simply nothing in the ALJ's decision indicating he found that Plaintiff's impairments limited her to light work.

The ALJ's RFC assessment should be based on all the relevant evidence. 20 C.F.R. § 404.1545(a). Social Security Ruling 96-8p requires that the RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." The RFC must "first identify the individual's functional limitations or restrictions and assess his or her work-related

abilities on a function-by-function basis...." SSR 96-8p. The ALJ must discuss the claimant's ability to work in an ordinary work setting on a regular work schedule. Id.

Here, the ALJ does not appear to have fully considered all of the relevant evidence, in particular the medical findings and opinions after Plaintiff's May 2009 accident in which she fractured her cervical spine at C7, in determining Plaintiff's RFC.[6] Although the ALJ included information concerning Plaintiff's treatment for her neck/cervical spine impairment, there is nothing to show how the evidence supports the ALJ's conclusion that Plaintiff could perform a full range of work at all exertional levels. This action should be remanded to determine whether Plaintiff had a severe physical impairment and to determine her RFC in light of all of the evidence.

B.  Listings

Plaintiff contends that the ALJ erred in failing to evaluate evidence indicating that her spinal impairment meets or equals the criteria of Listing 1.04A. The Commissioner contends that Plaintiff's assertion that the ALJ erred by failing to specifically address Listing 1.04A is without merit because she fails to show that she met or equaled this Listing.

"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). It is not enough that the claimant have the diagnosis of a listed impairment; the claimant must also have a medically determinable impairment that satisfies all of the criteria in the listing. 20 C.F.R. § 404.1525(d); see Bowen v. Yuckert, 482 U.S. 137, 146 and n. 5 (1987)(noting the claimant has the burden of showing that his

---

[6]If it is determined that Plaintiff's neck/cervical spine impairment was non-severe prior to her ay accident, this may affect Plaintiff's DIB claim as Plaintiff's insured status (for purposes of her application for DIB) expired on May 31, 2009 (see Tr. 14). Plaintiff, however, also applied for SSI benefits.

impairment is presumptively disabling at step three of the sequential evaluation and that the Act requires him to furnish medical evidence regarding his condition). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. Medical equivalence can be found if the impairment(s) is/are at least equal in severity and duration to the criteria of any listed impairment. 20 C.F.R. § 404.1526(a). A claimant has to establish that there was a "twelve-month period...during which all of the criteria in the Listing of Impairments [were] met." DeLorme v. Sullivan, 924 F.2d 841, 847 (9th Cir. 1991)(finding that the claimant's back impairment did not meet the requirements of section 1.05C; remanded on other grounds). An ALJ's failure to explicitly refer to a Listing by name does not, by itself, require remand, provided that the ALJ's decision is sufficient to permit the reviewing court to trace the ALJ's reasoning. See Rice v. Barnhart, 384 F.3d 363, 369-370 (7th Cir. 2004).

Listing 1.04 provides, in pertinent part:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> > A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.04.

The Commissioner argues that Plaintiff fails to show that she met or equaled this Listing because she has not shown her impairment resulted in compromise of a nerve root or the spinal cord. The ALJ, however, noted that cervical spine CT and MRI findings following Plaintiff's May 1, 2009

accident "were consistent with a C7 fracture with displaced fragment causing spinal cord compression." Tr. 17. Although it may be that Plaintiff's condition improved such that she did not meet or equal the Listing requirements for a period of at least twelve months, the ALJ did not address Listing 1.04A in his decision, such that it is impossible to determine from the opinion why Plaintiff did not meet or equal Listing 1.04A.

The Commissioner also argues that Plaintiff failed to met or equal Listing 1.04A because State agency physician Dr. Humphries reviewed the medical evidence and concluded that Plaintiff's vertebral fracture was not of sufficient severity to meet or equal a listing. Dr. Humphries' review (done in 2007), however, was made prior to Plaintiff's C7 fracture in May 2009.[7]

C. Treating Sources

Plaintiff alleges that the ALJ failed to properly assess the treating and evaluating physician's opinions as required by 20 CFR § 404.1527(d)(1)-(6), SSR 96-2p, and SSR 96-5p. Specifically, Plaintiff argues that the ALJ erred in discounting the opinions of Dr. Koukos and Dr. Smith. The Commissioner contends that the ALJ reasonably did not give controlling weight to Dr. Koukos' and Dr. Smith's opinions.

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other

---

[7]Dr. Stahl's 2008 opinion that Plaintiff's physical impairments were non-severe, and Dr. Oberlander's determination in 2008 that Plaintiff's physical impairments were non-severe were also made prior to the May 2009 accident.

substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992)).

Under § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors to determine the weight to be afforded the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527. Social Security Ruling 96-2p provides that an ALJ must give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p.

Although the ALJ gave numerous reasons (that his treatment notes do not support his opinion, that an EMG study in January 2009 was negative, and that the only evidence supporting Dr. Koukos statements were Plaintiff's subjective complaints) for discounting the opinions of Dr. Koukos (Tr. 23), the ALJ did not specifically discount the opinions of Dr. Smith. The ALJ also discounted Dr. Koukos' opinions in part because:

> Dr. Smith also opined that the claimant was disabled, but after the claimant's cervical spine fusion (Exhibits 30F and 33F), as noted above, the evidence shows good fusion with no impairment of coordination or dexterity and that any lingering pain was expected to improve within 12 months of surgery to non-severe.

Tr. 23. Dr. Smith, however, opined on October 14, 2009 that Plaintiff could only sit for two hours in an eight-hour workday and stand and walk for only one hour in an eight-hour workday. He indicated that the limitations were permanent due to Plaintiff's C7 fracture.

15

It is recommended that this action be remanded to the Commissioner to evaluate the opinions of treating physician Dr. Smith. The ALJ appears to have discounted Dr. Koukos' opinions at least in part based on an incomplete analysis of Dr. Smith's opinions and a determination that Plaintiff's impairment and pain were expected to improve. Thus, it is also recommended that this action be remanded to the Commissioner to consider the opinions of treating physician Dr. Koukos in light of all of the evidence.

## CONCLUSION

The Commissioner's decision is not supported by substantial evidence. This action should be remanded to the Commissioner to determine Plaintiff's RFC, determine whether Plaintiff met or equaled Listing 1.04A, and evaluate the opinions of Plaintiff's treating physicians (Koukos and Smith) in light of all of the evidence.

RECOMMENDED that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3) and that the case be remanded to the Commissioner for further administrative action as set out above.

Joseph R. McCrorey
United States Magistrate Judge

June 5, 2012
Columbia, South Carolina